**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MICHAEL CHAMPION,          :   Civil Action No. 08-CV-689 (NLH)(KMW)
     Plaintiff,          :
                  :
    v.                  :      **OPINION**
                  :
SPENCER GIFTS, LLC,        :
     Defendant.          :

**APPEARANCES:**

MARK CIMINO
1045 COOPER STREET
DEPTFORD, NJ 08096
    On behalf of Plaintiff

SARAH BETH JOHNSON
WILLIAM M. HONAN
CHRISTOPHER C. FALLON
FOX ROTHSCHILD LLP
MIDTOWN BUILDING
SUITE 400
1301 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401
    On behalf of Defendant

**HILLMAN**, District Judge

    Presently before the Court are the parties' Cross-Motions
for Summary Judgment on Plaintiff's claims that his termination
from employment with Defendant was a violation of his entitlement
to reinstatement under the state and federal Family Medical Leave
Act ("FMLA") and in retaliation for the Plaintiff taking that
leave.  For the reasons expressed below, both motions will be
denied.

1

## BACKGROUND

Plaintiff, Michael Champion, began employment with Defendant Spencer Gifts, LLC ("Spencer") in May 2001, when he was hired as a Promotion and Publicity Manager.  In 2006, Plaintiff was promoted to the position of Senior Marketing Manager. (Pl.'s Statement of Facts ¶ 3.)  At all times during his employment Plaintiff was, and considered himself, an at-will employee.  As an at-will employee Plaintiff was subject to the stipulation in Spencer's handbook which provides, "[Spencer] continues to have the absolute power to discharge anyone with or without cause and without prior notice."  (Def.'s Statement of Facts ¶ 3.) Plaintiff's job duty as Senior Marketing Manager was to develop strategic marketing programs to support business, including in- and out-of-store marketing, advertising, direct mail, loyalty club, e-commerce development, and email marketing.

Beginning in 2005, Plaintiff began reporting to Steven Chien, the Vice-President of Marketing and E-Commerce.  Reporting to Plaintiff at that time was Marketing Coordinator, Theresa Miller, and Marketing Manager, Debbie DeRosa.  Plaintiff, Chien, Miller, and DeRosa comprised Spencer's Marketing and E-Commerce Department.  The Marketing and E-Commerce Department did not meet their revenue goals forecast for the 2006 calendar year.  Not only did the department miss its goals, Plaintiff characterized the margin between projected and actual results by saying, "We

2

defiantly missed them. I know it wasn't close." (Johnson Cert., Ex. A, Pl. Dep. 59:1-2.)  Defendant contends that the Marketing and E-Commerce Department's poor performance in 2006 caused executives at Spencer, including CEO Steven Silverstein and COO Ike Silvera, to decide to terminate Chien's employment with Spencer.  Although it was ultimately Chien's responsibility to meet revenue goals, and his failure in that area set his termination in motion, the failure to meet those goals also reflected poorly on his entire departmental staff, including Plaintiff.

Additionally, Defendant contends that coinciding with Chien's termination, Spencer management decided to restructure the Marketing and E-Commerce Department.  This restructuring was done in an effort to revitalize the department.  The Marketing and E-Commerce Department was split, with Kyle Helvie taking responsibility for E-Commerce and Beth Bowman-Taylor being responsible for Marketing.  Bowman-Taylor's responsibilities during the restructuring of the Marketing Department consisted of "developing a business plan for the area and the strategy in terms of how she wanted to staff the area and, most importantly, the business objective was imperative[] in terms of making the marketing more relevant to Spencer's." (Johnson Cert., Ex. D, Graziosi Dep. 34:7-12.)  The restructuring of the Marketing and E-Commerce Department was first discussed with Bowman-Taylor in

late 2006/early 2007, before Chien's termination.  (Def.
Statement of Facts ¶ 15.)  According to Bowman-Taylor, it was
during this time period that she first recommended that Plaintiff
not come onto her Marketing team.

The restructuring was assigned to Bowman-Taylor by Anthony
Graziosi, Senior Vice President General Merchandise Manager, who
did so after meeting with COO Silvera, CEO Silverstein, and other
Senior Managers.  Graziosi emphasized that Bowman-Taylor was
directed to cut staff in furtherance of the department
restructuring and that she had discretion as to who would work in
the revitalized department.  Bowman-Taylor used her discretion to
make the recommendation that Plaintiff not become part of her
Marketing team.  Prior to his termination, Plaintiff never
reported directly to Bowman-Taylor, although she had the
opportunity to interact with him over the course of the previous
two years.  Bowman-Taylor did not have a high opinion of
Plaintiff in any facet of his employment.  Bowman-Taylor thought
poorly of Plaintiff's leadership skills, productivity, attitude,
and his uncooperative nature while working in a team environment.
Bowman-Taylor's overall impression led her to recommend that
Plaintiff not be a part of the newly-structured Marketing
Department.  This recommendation was given to her supervisor
Graziosi.

A Spencer employee cannot be terminated unless the

4

termination is approved by the CEO.  In Plaintiff's case, the
decision to eliminate his position resulted from Graziosi passing
Bowman-Taylor's recommendation to Silverstein.  Silverstein
consulted with Gail Margolin, the Vice-President of Human
Resources, and counsel Kevin Maloney with respect to Plaintiff's
termination.  Silverstein concurred with Bowman-Taylor's
recommendation that Plaintiff not join the newly restructured
Marketing Department based on their dialogue and Graziosi's
endorsement.  On February 23, 2007, Plaintiff was terminated via
telephone by Margolin.  At the time of his termination, Plaintiff
was on an approved leave of absence under the FMLA.

Plaintiff was scheduled to be on leave for six weeks from
January 26, 2007 to March 2, 2007 for the birth of his child.
Prior to taking this leave Plaintiff gave appropriate notice to
Spencer, and in early January 2007 the leave was approved by both
the HR Department and Plaintiff's then supervisor, Chien.  Prior
to starting his leave, Plaintiff was aware that Chien was no
longer working with Spencer.  (Johnson Cert., Ex. A, Pl. Dep.
52:22-25.)  Plaintiff was aware he would now report to Bowman-
Taylor, and he informed her of his pending leave of absence.
Bowman-Taylor states that she had already made the recommendation
to Graziosi to eliminate Plaintiff's position when she learned of
his leave.  Plaintiff, however, was not terminated until several
weeks into his protected leave, and claims that he was terminated

for taking that FMLA leave.  Defendant argues the timing is
coincidental and attributable to the dialogue that occurred
between the recommendation to eliminate the position, and
Plaintiff's actual termination.

To support his position, Plaintiff cites a conversation
between himself and Graziosi where Graziosi said, "Enjoy the time
with your kid."  Plaintiff characterizes this comment as being
made "sarcastically" and as a "jab."  (Johnson Cert., Ex. A, Pl.
Dep. 99:13-23.)  Defendant denies that his comment was made
sarcastically, characterizing the interaction as a sincere "well-
wishing."  Although the occurrence of the conversation is not
disputed, the circumstances surrounding it are.  Plaintiff claims
that it occurred after a weekly meeting and Graziosi denies this.
Plaintiff cannot identify anyone at the meeting who would have
heard the comment, and Graziosi does not proffer where the
interaction took place.  Although Plaintiff found the comment
"hurtful," he never discussed it with other Spencer employees.
Additionally, Plaintiff did not believe at that time that the
comment was an indication that Graziosi would retaliate against
him for taking an FMLA leave or that he would have difficulty
returning to work at the end of the leave.

After Plaintiff's termination, his job functions were
absorbed by Bowman-Taylor and the remaining Marketing Department
members, DeRosa and Mesler.  Both DeRosa and Mesler's salaries

6

were lower than Plaintiff's.  In February of 2008, DeRosa was promoted to a newly-created position of Senior Marketing and Licensing Manager, which focused primarily on a spinoff division of Spencer, Spirit Halloween.  Mesler remained a clerical employee in the department.

On January 8, 2008, Plaintiff filed a complaint in New Jersey Superior Court alleging that Defendant violated the FMLA and NJFMLA by retaliating against him for taking a protected leave of absence, and by failing to return Plaintiff to his former position or a position equivalent to that held prior to his leave.  (Comp. ¶¶ 12-14.)  Plaintiff alleges that because of his termination, he has suffered "grievous economic damage and loss, pain and suffering, humiliation, inconvenience, and emotional distress."  (Id. ¶ 15.)  Plaintiff seeks compensatory and punitive damages, reinstatement, attorney's fees, costs, and any other appropriate relief. (Id.)

On February 7, 2008, Defendant removed the proceedings from Gloucester County Superior Court to this Court.  After unsuccessful attempts at arbitration and mediation, Defendant filed the present Motion for Summary Judgment.  Plaintiff has cross-moved for judgment in his favor.  The Court will now consider both motions.

7

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.

8

2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### C. Plaintiff's FMLA and NJFLA Claims

The FMLA affords eligible employees "a total of twelve workweeks of leave during any twelve-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). The NJFLA affords an employee "a family leave of 12 weeks in any 24-month period upon advance notice to the employer . . . [i]n the case of the birth or adoption of a healthy child . . . ."

9

N.J.S.A. 34:11B-4b.  Upon returning from leave, the employee must be restored to his previous position or another position "with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1); N.J.S.A. 34:11B-7.  Plaintiff makes identical claims under the FMLA and NJFLA, and because NJFLA claims are so similar to the elements of a FMLA claim, they will be analyzed together.  See DePalma v. Bldg. Inspection Underwriters, 794 A.2d 848, 859 (N.J. Super. Ct. App. Div. 2002) (finding that the McDonald Douglass burden shifting framework used by the FMLA is adopted by the NJFLA).  Under both the NJFLA and FMLA, a plaintiff can seek recovery for FMLA violations under a theory of entitlement and of retaliation.  Parker v. Hanhemann Univ. Hosp., 234 F. Supp. 2d 478, 485 (D.N.J. 2002).  Plaintiff is pursuing both entitlement and retaliation claims.

   **1. Plaintiff's Retaliation Claim**

   "The retaliation theory protects employees from suffering discrimination because they have exercised their rights under the FMLA."  Santosuosso v. Novacare Rehab., 462 F. Supp. 2d 590, 596 (D.N.J. 2006) (internal citation and quotes omitted).  The FMLA regulations provide:

>    An employer is prohibited from discriminating
>    against employees or prospective employees who
>    have used FMLA leave. For example, if an
>    employee on leave without pay would otherwise
>    be entitled to full benefits (other than

> health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c). In a retaliation claim, "[t]he employer's motive is relevant, and the employer can defend its action as one based on a legitimate nondiscriminatory reason." Parker, 234 F. Supp. 2d at 488. Because the issues relevant under a FMLA retaliation claim are similar to those in other areas of employment discrimination, courts examining such claims will generally apply the burden-shifting framework established in McDonnell Douglass Corp v. Green, 411 U.S. 792, 800-06 (1973). Id. Under that framework, a plaintiff must first establish a prima facie case of discriminatory retaliation under the FMLA, requiring a plaintiff to demonstrate that:

    (1) he took FMLA leave,

    (2) he suffered an adverse employment decision, and

    (3) the adverse decision was causally related to his leave.

Lepore v. Lanvision Sys., Inc., 113 Fed. Appx. 449, 452, 2004 WL 2360994, *2 (3d Cir. 2004) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004)).

    Should a plaintiff establish a prima facie case, a presumption of discrimination is created and the burden of

11

production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden. Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production returns to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Prod. Inc., 530 U.S. 2097 (2000)). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the

employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citations and quotes omitted). To do this, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765 (internal citations and quotes omitted).

Plaintiff claims that his termination was retaliation for taking FMLA leave. In order to succeed on this claim Plaintiff must first establish a *prima facie* case. Defendant does not deny that Plaintiff successfully establishes the first two elements of a *prima facie* case for retaliation.[1] However, Defendant argues that Plaintiff cannot satisfy the third element because there is no causal connection between the termination and Plaintiff's protected leave. Plaintiff argues that a causal connection can be established in three distinct ways: by proof of ongoing antagonism, temporal proximity, and/or alleged inconsistences as to the reason for his termination.

As to temporal proximity, "The Third Circuit has stated that

---

[1] Plaintiff was entitled to and availed himself of a protected right under the FMLA--a leave of absence to be with his newborn child. Additionally, Plaintiff was adversely affected when Defendant terminated his employment.

'the mere fact that adverse employment action occurs after [a
protected activity] will ordinarily be insufficient to satisfy
the plaintiff's burden of demonstrating a causal link between the
two events.'" Reinhart v. Mineral Tech. Inc., 2006 WL 4050695,
at *11 (E.D. Pa. 2006) (quoting Robinson v. City of Pittsburgh,
120 F.3d 1286, 1302 (3d Cir. 1997)). "However, the court has
gone on to clarify that if the timing of the alleged retaliatory
action is 'unusually suggestive of retaliatory motive' a causal
link will be inferred." Id. at *11 (quoting Krouse v. Am.
Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

In this case, the preliminary recommendation to terminate
Plaintiff was made before he announced his intent to take FMLA
leave, but the final decision to terminate Plaintiff's employment
was made while he was out on protected FMLA leave, and plaintiff
was actually terminated while on that protected leave. The Court
is satisfied that the temporal proximity that occurs when an
employee is terminated while still engaging in a protected
activity is unduly suggestive of a causal connection between the
leave and termination. See Whitman v. Proconex, Inc., 2009 WL
141847, at *12 (E.D. Pa. 2009) (finding that finalizing a
decision to terminate an employee during their FMLA leave,
coupled with a firing minutes after returning from leave, is
unduly suggestive); see also Reinhart, 2006 WL 4050695, at *11
(finding a termination decision unduly suggestive when it occurs

14

twenty-four hours after the FMLA leave ends); Parker, 234 F. Supp. 2d at 492 n.15 ("[D]ischarge on the day of plaintiff's return is enough to suggest causation at this *prima facie* stage of the summary judgment motion."). Thus, by showing a causal connection, Plaintiff has satisfied the third requirement and has established a *prima facie* case of retaliation.[2]

Because Plaintiff has established a *prima facie* case for his retaliation claim, the burden of production shifts to Defendant to show a nondiscriminatory reason for its termination. This burden is relatively light, and Defendant has satisfied it by asserting that the reason for termination was made in accordance with a strategic restructuring of the Marketing and E-Commerce Department because of its poor performance.

Under the burden-shifting scheme of the McDonnell Douglas framework, the burden persuasion ultimately rests with Plaintiff. As such, the burden shifts back to Plaintiff to show by a preponderance of the evidence that the legitimate reason Defendant proffered for termination was merely a pretext for

---

[2]As discussed below in the context of Plaintiff's burden to rebut Defendant's proffered legitimate reasons for termination, evidence of inconsistent reasons for termination may also support Plaintiff's *prima facie* case. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (citation omitted) (stating that timing and ongoing antagonism are "not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference," and that "a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee").

discrimination. To support his claim that Defendant's proffered reasons for his termination were a pretext--and were truly motivated by his availment of his FMLA rights--Plaintiff presents three pieces of evidence: (1) his termination occurred while he was on leave; (2) Graziosi's comment, "Enjoy the time with your kid," which Plaintiff claims was said sarcastically and as a "jab"; and (3) Defendant's inconsistent reasons for Plaintiff's termination--corporate restructuring/cost cutting and his poor job performance. Individually, none of these reasons is sufficient to meet Plaintiff's burden of persuasion. See Truesdell v. Source One Personnel, Inc., 2009 WL 1652269, at *8 (D.N.J. 2009) ("While . . . temporal proximity can be sufficient to establish a prima facie case, it alone is not sufficient to rebut Defendant's proffered reasons for, or show that discrimination was more likely than not, a motivating or determinative cause of, the adverse employment action."); Edwards v. Pennsylvania Turnpike Com'n, 80 Fed. Appx. 261, 264 (3d Cir. 2003) (finding remarks made by supervisors unrelated to the decision to terminate a plaintiff were stray remarks and not to be given great weight); see also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ."); Fuentes, 32 F.3d at 765 (stating that a "plaintiff cannot simply show that the

employer's decision was wrong or mistaken, since the factual
dispute at issue is whether discriminatory animus motivated the
employer, not whether the employer is wise, shrewd, prudent, or
competent").

Considered collectively, however, Plaintiff's evidence of
temporal proximity, antagonism, and inconsistencies regarding the
reasons for his termination tip the scales such that his case
must be presented to a jury.  As the Third Circuit has
instructed, Plaintiff "must demonstrate such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons for
its action that a reasonable factfinder could rationally find
unworthy of credence, and hence infer that the employer did not
act for [the asserted] non-discriminatory reasons."  Fuentes, 32
F.3d at 765 (internal citations and quotes omitted).  Although
both parties urge that there is nothing for the jury to decide,
material issues of fact remain as to the why Defendant has
provided differing reasons for Plaintiff's termination, as well
as issues as to the credibility of Defendant's employees involved
in the decision to fire Plaintiff.  These issues, coupled with
the termination of Plaintiff while he was on protected leave, and
the conflicting interpretations of Graziosi's allegedly
antagonistic comment to Plaintiff that was directed at
Plaintiff's availment of his FMLA rights, all require a jury's

17

resolution.

Specifically, with regard to the dual reasons for Plaintiff's termination, in his rebuttal of Defendant's legitimate non-discriminatory reasons for terminating him, Plaintiff presents four answers in depositions and interrogatories completed by Defendant's employees that demonstrate conflicting reasoning.  Two propositions state that he was not fired for performance, while two others show that he was fired for performance-related issues.  First, Plaintiff references the interrogatory where Defendant states, "Defendant does not contend that Plaintiff was terminated from employment for performance-related reasons." (Cimino Cert., Ex. E, p. 3, int. 3.)  Second, Plaintiff references an affirmative response by the head of human resources to the question, "So you're saying even if his performance was good, his position would have been eliminated?"  (Johnson Cert., Ex. E, Margolin Dep. 49:4-7.) Third, Plaintiff cites to the interrogatory response where Defendant says, "Thus, the decision was made to eliminate the employees with the highest salaries - Plaintiff and Mr. Chien - and to retain the employees with the lowest salaries . . . ." (Cimino Cert., Ex. E, p. 2, int. 1.)  Defendant's own words evidence that one reason Plaintiff was terminated was for restructuring and cost-cutting.

Conflicting with those statements, however, are statements

18

by Defendant's employees that Plaintiff was terminated for
performance.  In recommending that Plaintiff be fired, Bowman-
Taylor states that she looked at her history with him before
recommending that he be terminated.  She felt that Plaintiff was
not productive, he did not complete tasks in a timely manner, and
he did not pay attention to detail.  She also stated that she
took into consideration "[his] lack of leadership skills," his
being an "uncooperative team player," and the lack of a "can do"
attitude that she expected.  (Johnson Cert., Ex. F, Taylor Dep.
26:25-27:8.)  Bowman-Taylor made her recommendation to Graziosi,
who testified, "She didn't want him on her staff.  She made that
proposal to me, I endorsed it based on her recommendation. . . .
If [Beth Bowman-Taylor] had been an advocate of [Plaintiff], if
she had wanted [Plaintiff] to remain on her staff, [Plaintiff]
would still be part of her staff."  (Johnson Cert., Ex. D,
Graziosi Dep. 41:16-18, 42:10-14.)[3]  The recommendation to

_____

    [3]The Court notes that Plaintiff's Reply Brief cites 42:10-14
of Graziosi's deposition, and misquotes the deposition. (Johnson
Cert., Ex. D, Graziosi Dep. 42:10-14.)  Plaintiff's brief
represents that Graziosi testified, "if Mr. Champion's
performance was acceptable, he would have remained employed."
(Pl. Reply at 1.)  The actual language of that passage located at
42:10-14 is: "If she had been an advocate of Michael Champion, if
she had wanted [him] to remain on her staff, [he] would still be
part of her staff."  If Graziosi made such a statement as
represented in Plaintiff's brief, it is not at 42:10-14, or in
any other portion of Graziosi's deposition transcript provided to
the Court.  While counsel should be mindful of the obligation to
quote the record accurately, the import of the two statements is,
nonetheless, roughly the same: in Graziosi's view, cost-cutting
had nothing to do with Plaintiff's termination.  This
inconsistency is made even more relevant by defendant's failure

terminate Plaintiff was passed through Graziosi to Silverstein,
Silverstein agreed with the recommendation, consulted with Human
Resources, and ultimately executed the termination while
Plaintiff was on FMLA leave.  Thus, evidence also shows that
Plaintiff was terminated for poor performance, and not simply a
reduction in the work force as a cost cutting measure.[4]

These two reasons may be reconcilable--the underperforming
marketing department needed restructuring, Plaintiff was one of
the highest paid members of that department and was not
performing sufficiently, so he was selected for termination, even
though, by coincidence, he was on FMLA leave by the time the pre-
FMLA-leave recommendation for termination passed up the corporate
chain of command and was finally carried out.  Whether that is a
creditable rationale is for a jury to decide, however, because
Defendant did not set forth this scenario from the inception of

_____

to identify Graziozi in answers to interrogatories as having
participated in the decision to terminate Plaintiff. See
Certification of Mark Cimino [Document 13-3], Exh. E.  A
reasonable factfinder could conclude that this omission was
intentional because Graziozi's reason for termination
(performance) was different than that proffered by more senior
management during the course of this litigation (cost-cutting).
This is not to say that this Court views Plaintiff's case as
particularly strong, only that a jury and not this Court should
decide whether these inconsistencies are simply evidence of mixed
legitimate motives or a mask for an improper one.

[4]Contrasted to these statements about Plaintiff's
performance, it is undisputed that Champion was eligible for his
full 12% bonus in April 2007, and that he was never subject to
the performance improvement procedure, which consists of an
action plan implemented for employees who are not up to par.

the case--its reasons changed during the course of litigation.
Further, even though Plaintiff does not dispute that he was
selected for termination by Bowman-Taylor prior to his FMLA
leave, and that she did not know of his intention to take FMLA
leave, evidence on the record suggests that Graziosi, who
approved of Bowman-Taylor's recommendation since she had no
actual authority to fire Plaintiff, not only knew of Plaintiff's
intention to take FMLA leave, he made a comment directly relating
to that leave.  The Court cannot determine whether Graziosi's
comment was sincere, and the Court cannot determine what the
truth is regarding the reasons for his termination. Marino v.
Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting
Anderson, 477 U.S. at 255) (instructing that in considering a
motion for summary judgment, a district court may not make
credibility determinations or engage in any weighing of the
evidence).  Without being able to assess the credibility of
Defendant's proffered reasons for termination, and considering
the timing of his termination, the Court cannot determine as a
matter of law that the decision was completely unrelated to
Plaintiff's availment of FMLA leave.  Thus, sufficient
inconsistencies and contradictions exist such that a reasonable
jury could rationally determine that Defendant did not act

pursuant to non-discriminatory reasons.[5]  Accordingly, the
parties' motions for summary judgment as to Plaintiff's
retaliation claim must be denied.

### 3. Plaintiff's Entitlement Claim

The entitlement, or interference, theory "makes it unlawful
for an employer to interfere with, restrain or deny an employee's
rights under the FMLA." Reinhart, 2006 WL 4050695, at *12
(internal quotes omitted); see also Parker, 243 F. Supp. 2d at
485.  Although the FMLA provides a right to reinstatement, this
is qualified by the fact that nothing in the FMLA should be
construed as a right, unless that right would have existed had
the employee not taken leave.  29 U.S.C. § 2614(a)(3).  In the
case of reinstatement, which Plaintiff is claiming, the FMLA
allows an employer to deny reinstatement if the employee, who was
on protected leave at the time, would have lost his job even if
he had been working.  See id.  Thus, an employee is not protected
from an adverse employment action that would have occurred if he
had not exercised his right to leave.

It is essential to know on whom there is a burden to

_____

[5]See, e.g., Potence v. Hazelton Area School Dist., 357 F.3d
366, 371 (3d Cir. 2004) (finding that "ageist" remarks, failure
to inform plaintiff of an apparent experience requirement, and
various reasons at different stages in the hiring process as to
why plaintiff was not hired, could be considered collectively
sufficient to send to a jury for it to determine the issue of
pretext).

demonstrate whether or not the termination would have occurred but for the protected leave.  The Department of Labor has interpreted the FMLA and placed the burden on the employer:

> If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. § 825.216(a)(1).  Although the statute clearly places the burden on the employer, the Third Circuit has not considered, and other circuits are divided on, what that burden is.  The Tenth Circuit, interpreting the Department of Labor, sees this burden as a total burden of proof on the employer, analogous to an affirmative defense.  See Smith v. Diffee Ford-Lincoln-Mercury, 298 F.3d 955, 963 (10th Cir. 2002).  The Seventh Circuit has imposed a lighter burden, where the employer's burden is not a burden of proof, but a burden of coming forward with some evidence that the employee would be terminated.  See Rice v. Sunrise Express, 209 F.3d 1008, 1018 (7th Cir.), cert. denied, 531 U.S. 1012 (2000).

Under either burden, because disputed issues of material fact remain as to why Plaintiff was fired, it cannot be

determined whether Plaintiff would have terminated even if he had not taken leave.  Accordingly, the parties' motions as to Plaintiff's entitlement claim must be denied.

### CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment will be denied as to all counts.


Date: September 24, 2009              s/ Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

24